SMALL, Appellant, v. HATCH et al.

Division Two, July 3, 1899.

1. **Reference:** COMPULSORY: LONG ACCOUNT: REFORMATION OF DEED. Where there is a compulsory reference, because of the length of the account set up in the answer as a counterclaim, or where the suit is one in equity involving the reformation of a deed, the court may, on the motion of either party, review the findings of the referee on the evidence reported and make its own findings, and for the same reasons the judgment of the circuit court is reviewable by the appellate court.

2. **Equity:** RESULTING TRUST: OWNERSHIP OF LAND: MORTGAGE: EVIDENCE. Plaintiff, being worth $100,000, by written contract bought land from B. at the price of $10,000, and paid $50 to secure the purchase. Afterwards at plaintiff's request B. made a deed to defendant, plaintiff's son-in-law, who received $5,000 from plaintiff and turned over $4,950 of it to B., gave a first mortgage due in two years to B. for $5,000, and a second one to plaintiff to secure the money advanced, and within a few months sold the property to L. at one price of $20,000, who paid him $5,000 in cash, of which he turned over $4,481 to plaintiff, the balance of $519 going as commissions to the agent making the sale. L. also assumed the $5,000 note and mortgage held by B., and gave his notes of $7,500 and $2,500 to defendant for the balance. These notes defendant at once indorsed to plaintiff, who kept them in his possession until collected by plaintiff. On the first, $7,250 was paid to defendant, who

was a lawyer, of which he paid plaintiff $7,000, and retained $250, and on the other, $2,600 was paid, of which he kept $100 and paid plaintiff the balance. This suit was to collect notes for $9,500 which plaintiff some years previously had let defendant have to construct some buildings on lots which plaintiff had given defendant's wife, and which notes plaintiff had secured by a mortgage on the lots. Defendant contended that the payments of $7,000 and $2,500 were on these notes, although he also contended that plaintiff had said he intended to give these notes to his daughter or grandchildren by will. *Held,* under all the evidence, that the owner of the land bought from B. was the plaintiff and the title was taken in defendant as trustee for plaintiff; that the principal and interest of the $9,500 debt was due, and the mortgage securing it should be foreclosed.

*Appeal from Jackson Circuit Court.*—Hon. Edward P. Gates, Judge.

Reversed and remanded *(with directions).*

Brown, Chapman & Brown and Johnson & Lucas for appellant.

(1) The plaintiff contends:    (a)   That this is an equitable action, and the report of the referee only a special finding to be approved or disapproved by the chancellor or by the Supreme Court, and if disapproved the chancellor or the Supreme Court can make such findings as may appear just and proper.    (b)   Should the court be of opinion that this is a case at law, still the reference was compulsory, and in such case the court may set aside or modify the findings of the referee, and make such findings as to the court appears just and proper.    (c)   If the case is one at law and the reference voluntary, then the court must set the same aside, for the reason that the same could not be referred by consent.    (d)   If the case is one at law, and the reference voluntary, then the report of the referee allowing the defendant the credits of $7,000 and $2,500 should be set aside by the court as being against the weight of the evidence adduced upon the trial.    (2)   The

finding of the referee was without question contrary to the evidence in the case.

R. B. MIDDLEBROOK and C. O. TICHENOR for respondents.

(1) An action to foreclose a mortgage or deed of trust, under the provisions of the statute, is one at law. The instrument sought to be foreclosed was perfect in every way as a mortgage. It was given to secure a note, the payee of which was made the second party. Hence the third party is useless —a stranger to the instrument, which is a mortgage, with power of sale in the mortgagee and which can be foreclosed. There was nothing to correct in order to make it a mortgage. Gaines v. Allen, 58 Mo. 543; State to use v. Miserez, 64 Mo. 596. So, then, there was nothing of an equitable nature in the petition. (2) Is there anything in the answer which changes the suit to equity? We say there is not. What are the defenses? A credit of $1,000, for cash, which plaintiff had received of defendant Hatch prior to the execution of the notes; (b) a set-off on account of legal services; (c) a payment of $2,500, in August, 1883; (d) a set-off for $3,300 due him on account of a sale by plaintiff of a smelter owned by Hatch; (e) a payment of $7,000 in January, 1888, and $2,500 in March, 1889. Defendant Hatch was allowed a credit for $9,500, and general judgment was rendered against him for $3,914.47 and special against the land. The answer does pray a satisfaction of the deeds of trust, but if the debt was satisfied either by payments or set-off, the lien of the deeds of trust ceased and it needed no decree to aid it. The facts pleaded, and not the prayer, stamp the character of the action. The form of the petition in ejectment, handed down from revision to revision of our statutes, ends with "and for other proper relief," but that does not render it equitable. Kostuba v. Miller, 137 Mo. 172; Kerstner v. Vortweg, 130 Mo. 196; Mason v. Barnard, 36 Mo. 390. (3) At law, a court

may set aside but can not amend the report of a referee. Clark v. Phillips, 99 Mo. 550; Caruth-Byrnes Hardware Co. v. Woeter, 91 Mo. 488. (4) Counsel say the reference was a compulsory one. If so, all references should be so classed. At first a reference was ordered without consent of plaintiff and upon the only matter of defense which could be in the nature of an account. Plaintiff objected to it because the reference was not broad enough; that it should cover "the whole" of the action. Afterwards it was stipulated in writing that the order might be set aside "and this entire cause is hereby referred to M. A. Fyke, as referee, to hear and decide the whole case." Upon it the court made the order in accordance with it as it was bound to do. But counsel say if the reference was voluntary, it should be set aside because infants were parties to it. So, then, it seems if counsel are right that plaintiff can suggest and agree to a reference, speculate upon the chances of victory, meet with defeat and then have the report set aside because the infants who have gained the victory could not consent to the reference; this, too, in the face of the fact that the plaintiff has raised the point for the first time in this court. Thompson v. Maxwell Land Grant Co., 168 U. S. 463. (5) When Hatch received the money from plaintiff, and gave him in return his note, thereby promising to repay the money with interest, in one year, it became his money, and it was this money that he paid to Boone; that was the legal effect of the matter, and this was their contract in writing which neither can contradict, unless there was fraud or mistake. Chrisman v. Hodges, 75 Mo. 413; State ex rel. v. Hoshow, 98 Mo. 361; Jones v. Shaw, 67 Mo. 669; Reed v. Painter, 129 Mo. 682; Burdett v. May, 100 Mo. 13; Porter v. Woods, 138 Mo. 550; Darling v. Potts, 118 Mo. 530; Ben. Ass'n v. Kribben, 48 Mo. 37; Franz v. Dietrick, 49 Mo. 95.

GANTT, P. J.—This is a suit in equity to reform and foreclose two certain deeds of trust in the nature of mortgages.

to secure two promissory notes, one for $5,000, dated April 7, 1884, bearing seven per cent interest and due two years after date, and the other for $4,500, dated September 6, 1884, and bearing eight per cent interest and due five years after date.

The title to the mortgaged property was in Mrs. Lilian L. Hatch, who was the wife of the defendant Peter E. Hatch, and the mother of the two minor defendants, and the daughter of plaintiff Small. Mrs. Hatch died prior to the institution of this suit. It appears that in June, 1883, the plaintiff conveyed to his daughter Mrs. Hatch the lot described in the mortgage. It cost him $3,500. He paid $1,000 cash, and assumed a mortgage thereon for $2,500.

This action was commenced September 14, 1894.

The deed of trust of date April 5th, 1884, by mistake of the scrivener was so drawn as to make John T. Marshall the beneficiary instead of trustee. And the petition as to that deed of trust prayed for reformation.

Defendant Peter E. Hatch in his answer neither admitted nor denied the receipt of the $9,500, but prayed an accounting. The defenses are:

1st. That plaintiff urged his son-in-law to improve this lot, and furnished the most of the money to do it; that these notes were given for this money; that this money was in the nature of an advancement by plaintiff to his daughter, and that he agreed never to claim payment of the notes. 2d. That plaintiff owed defendant, P. E. Hatch, $1,000 at the time the first note was made, which should be credited thereon. 3d. That plaintiff owed defendant, P. E. Hatch $3,392.25 for legal services, for which he claimed a set-off. 4th. That in 1887 and 1888 he became convinced that plaintiff did not intend to keep his promise as to said notes sued on, and that on January 7, 1888, he paid plaintiff on said notes $7,000; that on March 3, 1889, he paid him $2,500, and in August, 1893, he paid him $2,500 to lift the incumbrance which was on the lot when it was conveyed by plaintiff. He prayed

that plaintiff should be ordered to give up and cancel the notes and deeds of trust sued on; that defendant have judgment for $3,300 with interest at 6 per cent thereon from August 1, 1883, on his counterclaim growing out of the sale of the mining plant in New Mexico and for general relief.

The reply was a general and special denial of all the allegations in the answer except that plaintiff admitted that he purchased the property for $3,500; that he paid $1,000 cash and afterwards paid the $2,500 mortgage thereon for the benefit of his daughter. He pleaded the statute of limitations to the alleged attorney's fees and also a general denial thereof.

The cause, on motion of defendant, was referred on January 1st, 1895, to a referee to take the account as to alleged professional services of defendant to plaintiff. On motion of plaintiff this order of reference was set aside and at the April term upon stipulation the whole cause was referred to Hon. M. A. Fyke to report the evidence and his findings of law and facts.

The referee in due time heard the evidence and made his findings: First, that the money represented by the notes in suit was received by defendant from plaintiff. Second, that the defense that the same was a gift or an advancement was not sustained, and that the finding should be for the plaintiff on both counts of the petition. Third, that the credit for $1,000 claimed on account of the application of a part of the money represented by the notes to the payment of a claim from the plaintiff to the defendant was not sustained but disallowed. Fourth, that the credit of $7,000 of date January 7, 1888, and of $2,500 of date March 23, 1889, claimed in the answer, was found to have been made by the defendant to the plaintiff, and a deduction thereof was made by the referee from the amount found due by defendant to plaintiff. Fifth, that the account for legal services was disallowed on account

of the fact that defendant made no charge and intended to make none and for the further reason that plaintiff produced numerous receipts given by defendant in full for legal services. Sixth. On the counterclaim the finding was against defendant and in favor of plaintiff.

No appeal was taken by defendants from any of the adverse findings against them.

The final conclusion of the referee was that after deducting the sum of $7,000 January 7th, 1888, and $2,500 March 23d, 1889, plaintiff was entitled to judgment for $3,914.47.

The plaintiff duly filed exceptions to the report which were overruled and plaintiff excepted. Plaintiff then filed his motion for rehearing, which was overruled and plaintiff excepted and perfected his appeal to this court.

I. Both sides to this controversy are committed to the doctrine that a reference of this case was proper for several reasons.

The defendant moved the court to refer because the counterclaim required the examination of a long account and the court referred the counterclaim. It was then urged by the plaintiff that the cause was one in equity involving the reformation of a written instrument and that the whole cause should be referred if any part was. It is obvious from the length of the account filed that it was within the province of the court to refer the case without the consent of either party. In a word it was what is denominated under our practice a compulsory reference. In such cases it can no longer be doubted that the court may on motion of either party review the findings of the referee on the evidence reported and make its own findings. [State ex rel. v. Hurlstone, 92 Mo. loc. cit. 333; Wentzville Tobacco Co. v. Walker, 123 Mo. 671; Hdw. Co. v. Wolter, 91 Mo. 484.]

This is a suit in equity for the reformation of a written instrument. In addition the long account is set up in the answer. For those reasons compulsory reference was proper

and also under that other provision of our statute which provides for a compulsory reference when the taking of the account is necessary for the information of the court before judgment can be properly rendered.

This being a reference which the circuit court could review on the evidence reported and render its own judgment thereon, the judgment of the circuit court is likewise reviewable in this court. In such cases while this court ordinarily defers to the judgment of the circuit court it is settled law that we are not bound to adopt the decree of the circuit court if upon a re-examination we are of opinion that it has erred.

One question alone is before us, and that is the propriety of the holding that the Moses Levy notes for the Boone tract belonged to defendant Hatch, and not to plaintiff, and charging plaintiff with their proceeds as a payment on defendant's notes secured by the mortgages which this suit seeks to foreclose.

The burden to establish his ownership of said notes was assumed by defendant Hatch.

As this right depends wholly upon the evidence, the substance thereof must be given in order to understand the findings.

The defendant Hatch testified that he was 38 years old. That the minor defendants are his children. That their mother, Lilian L. Hatch, was the daughter of plaintiff. That they were married November 12, 1882, and went to live on the premises in controversy. That the improvements thereon consisted of a one story basement cottage, containing about six rooms. That soon afterwards plaintiff came to live with defendant. That the title to the property at this time was in plaintiff. That on June 25th, 1883, he conveyed the same to defendant's wife. That he subsequently improved the property, on the suggestion of plaintiff. That he and his wife executed the notes and deeds of trust sued on. That notwithstanding the fact that the money advanced by plaintiff for the

improvements was in the nature of a gift or an advancement and notwithstanding plaintiff said he would never enforce payment upon the notes, defendant became suspicious of plaintiff and came to believe that he was not acting in good faith, and feared that there would be trouble between them, so that on January 7th, 1888, he paid the plaintiff $7,000, and on March 23d, 1889, he paid the plaintiff $2,500 in payment of the notes, and asked that they be fixed, and was told that he need not be uneasy; that plaintiff had made his will and that the notes would go to the children. That no demand had ever been made for any part of the notes sued upon until suit was commenced.

That the $7,000 and the $2,500 paid to plaintiff was derived from and grew out of what is known as the Boone transaction. That in February, 1887, he purchased from Napoleon Boone forty acres of land for $10,000. That he paid Boone $5,000 cash, and gave a note and deed of trust to him to secure the balance. That he borrowed $5,000 from plaintiff to make the cash payment, and to secure this $5,000 he gave plaintiff a note and second deed of trust on the property at 8 per cent, due in two years. That plaintiff had some kind of a contract with Boone whereby he had paid Boone $50 for the option, but he, defendant, was to have the land.

Concerning the loan of $9,500 and the improvement of the property, plaintiff, Small, testified that the defendant married his daughter in November, 1882. That he conveyed the property to his daughter subject to a deed of trust for $2,500 given to secure the purchase money. That the defendant wanted to improve the property by building a brick block, and asked plaintiff to loan him the money for such purpose. That plaintiff and defendant went to an architect, and the improvement was estimated to cost $9,500 which plaintiff agreed to loan. That about the time the improvement was commenced, defendant and wife executed to plaintiff a note and deed of trust for $5,000, being the note and

deed of trust mentioned in the first count of the petition. That the $5,000 was paid and went into the construction of the buildings. That afterwards defendant and wife executed to plaintiff another note and deed of trust for $4,500, mentioned in the second count of the petition, and this money was paid to defendant as needed in the erection of the improvement. That the notes and deeds of trust were delivered as soon as executed and placed of record, and have been in the possession of plaintiff ever since. That in the late fall of 1884, when the improvement had been about completed, there was a casting up between plaintiff and defendant, showing that plaintiff had fully paid defendant the $9,500. That in the summer of 1883, plaintiff paid the $2,500, the balance of the purchase money upon the lot conveyed to his daughter. That after the note sued upon became due plaintiff made frequent demands upon the defendant for payment; that these demands were made at the home and office of defendant, and were made every year; that defendant never denied owing the notes until after the commencement of this suit.

Concerning the Boone transaction, plaintiff testified that he purchased the forty acres of land from Boone for the sum of $10,000 and paid $50 cash upon the signing of the contract. The contract between Boone and plaintiff for the purchase of the forty acres is in the record, as is also the check for $50. That when the trade was closed plaintiff took the title to the land in the name of the defendant, P. E. Hatch. He gave Hatch $5,000 to make the cash payment. That the property was conveyed from Boone to Hatch; that Hatch paid Boone, from the $5,000 given him by plaintiff, $4,950, and gave Boone a note and deed of trust on the land for $5,000. Hatch also gave plaintiff a note and deed of trust for $5,000 as a second mortgage on the land, so that defendant could not take advantage of plaintiff. That Hatch retained $50 out of the $5,000 given him by plaintiff as his fee for examining the title.

Napoleon Boone testified as to the sale of the land that he was the owner of the land; that he sold it to plaintiff in December, 1886; that he entered into a written contract with plaintiff for the sale of the land, and received a check for $50 to bind the bargain. He identified the contract and check already in evidence. That he deeded the land to Mr. Hatch, because Mr. Bales, who was looking after it for him, said that the deed was to be made to Hatch; that Hatch paid him $4,950, the balance of the $5,000, and gave a note and deed of trust for $5,000; that he conveyed the land under the contract with Small; that he had no contract with Hatch for the purchase of the property; did not know the deed was to be made to Hatch until he went to the office of Mr. Bales to execute it, and this was some two or three months after the sale. That he had never had any conversation with Hatch concerning the sale of the property; that he never saw Hatch until Small introduced him to him for the purpose of having the abstract examined; that his entire talk about selling the property was with Small; that Small wrote the contract of sale which he signed.

Concerning the sale of the property to Levy and possession of the notes by the defendant, defendant Hatch testified that in March, 1887, he sold the Boone property to Moses Levy for $20,000; that Levy paid $5,000 cash, assumed the deed of trust for $5,000 given to Boone, executed two notes, one for $7,500, due in one year, and one for $2,500, due in two years, at 8 per cent interest, secured by deed of trust on the land, subject to the $5,000 deed of trust assumed by Levy; that upon the signing of the contract Levy paid $1,000, which was turned over to plaintiff on the receipt of it, and when the deed passed he paid the balance of the cash payment, $4,000. Out of this sum defendant paid plaintiff $3,481; that the $519, the difference between the $5,000 loaned by plaintiff and the $4,481 which he had received, defendant supposed he paid it some other way, as he and plaintiff had

had dealings between them. That upon the execution by Levy of the notes for $7,500, and $2,500, defendant took them into his possession, but had an indistinct recollection of having loaned them to plaintiff to be used as collateral security for the raising of some money; that plaintiff only had the notes a short time.

As to the sale to Levy and the possession of the Levy notes, the plaintiff's testimony is in substance: That plaintiff directed the sale to Levy of the land for $20,000; that Levy paid $5,000 cash, assumed the Boone mortgage of $5,000 and gave his two notes, $7,500 and $2,500, due in one and two years, secured by deed of trust subject to the Boone mortgage for the balance of the purchase money on the Boone sale; that at the signing of the contract for the sale, Levy paid $1,000 which was turned over to plaintiff by defendant, Hatch, on the day he received it. That when the trade was closed plaintiff released the deed of trust for $5,000 which Hatch gave him when the Boone deal was closed; that he received of the $4,000 balance from Levy a check from Hatch for $3,481; that Hatch paid $500 commissions to parties making the sale to Levy, and paid the other $19 for bringing down the abstract, and for certificates of judgments and taxes; that the Levy notes for $7,500 and $2,500 were indorsed and turned over to plaintiff by defendant when made; that plaintiff put them in his safe deposit box, and afterwards in the bank; that the notes were in the possession of plaintiff all the time, until they were paid, except at one time he placed the $2,500 note in the hands of the defendant for collection, taking a receipt therefor. The receipt is dated Kansas City, August 1st, 1888, and is as follows: "Received of W. Small, Jr., the following notes for collection:

"Moses Levy, dated March 12th, 1887, at 8 per cent semiannually, amount paid (in pencil "pd") payable in two years from date $2,500.00. (Then follow other notes.)
"P. E. Hatch."

That the notes were indorsed by defendant to plaintiff; and these notes were left at Armour Brothers Bank, July 26, 1887. The books of the Armour Brothers' Banking Co. were introduced showing that on July 26th, 1887, the plaintiff placed in the bank the Moses Levy notes for $7,500 and $2,500 for collection, the disposition of the proceeds to be placed to the credit of plaintiff.

Upon the question of collection and retention of interest, defendant testified that he received the interest on the notes due in September, 1887. That he received the interest on the $2,500 note due in March, 1888. That he received the interest on the $2,500 note due in September, 1888. Plaintiff testified that the interest which was due in September, 1887, was paid upon the notes at the bank and placed to his credit; that the interest on the $2,500 note which was due in March, 1888, was paid him; also, that due in September, 1888, was collected and paid to him by the defendant, less fees.

The books of the Armour Brothers Packing Co. being introduced showed that the interest due upon the Levy notes in September, 1888, was collected at the bank, $400, and placed to the credit of plaintiff. The same evidence showed that $100 interest collected on the $2,500 note in March, 1888, was placed to the credit of plaintiff. It is admitted that plaintiff received the check from the defendant, $95, interest on the $2,500 note due March, 1888.

Upon payment of the Levy notes, defendant says that he had the $7,500 note in his possession a long time before it was paid; that on January 7th, 1888, he received from Levy in full settlement of the note $7,250; of this amount he paid plaintiff on that day $7,000. Plaintiff testifies that the note was in the bank from July, 1887, until January 7th, 1888. That he was told by the defendant that defendant could get $7,250 in full of the note; that plaintiff directed him to take it; that on January 7th, 1888, plaintiff took the $7,500 note from the bank and turned it over to defendant to be returned

to Levy upon the payment of $7,250 which was done; that defendant gave plaintiff on that day a check for $7,000, retaining $250 for his services. The entry in the books of the Armour Banking Co., offered by plaintiff, shows that the Moses Levy note of $7,500 was returned to plaintiff Small, January 7, 1888.

Concerning the $2,500 note defendant testified that he had it in his possession from its date; that he did not receive it for collection from Small; that in March, 1889, Levy paid, principal and interest, $2,600; that he gave Small a check for $2,500. Plaintiff Small testified that he had this note in the bank from July 26, 1887, to July 9, 1888; on that date he took it from the bank and gave it to defendant for collection, taking his receipt therefor. The receipt is found in the record. The books of the Armour Banking Co. show that the Levy $2,500 note was returned to plaintiff on July 9th, 1888.

Witness Guynan, for the defendant, testified that plaintiff told him in the spring of 1887 that the defendant had made $10,000 out of a deal south of Westport. Witness McGonigle, for defendant, testified to substantially the same statement. S. J. Hatch, witness for and brother of defendant, testified to substantially the same statement; and, further, that plaintiff also told him that the defendant had made some money on the Hazard Place property.

Defendant Hatch admitted that he took the title to the Hazard Place property in his name for plaintiff, and gave plaintiff a mortgage back upon the property. Also, that he took the title in his name for plaintiff to certain property in Wyandotte county, Kansas. Also, that he took the title in his name to certain property for plaintiff in Texas county, Missouri, and gave plaintiff a mortgage back upon that property.

Plaintiff denies telling said witnesses that the defendant had made the $10,000 mentioned. Plaintiff further testified that it was his habit and custom to keep a diary showing the notes that he owned and carried these entries concerning these

notes from year to year. This diary corroborated plaintiff as to the dates of the possession of the notes sued on.

The learned referee was much perplexed to determine whether plaintiff or defendant was the real purchaser of the Boone tract and hence owner of the purchase money arising from its sale. He says: "So much feeling has been manifested by both parties during the progress of the hearing that it impresses me with a fear that in the anxiety of each to gain some advantage over the other the truth may have at times been lost sight of or at all events shaded. To reconcile the testimony is impossible. Both parties have been contradicted in regard to material matters and at the same time both have been able to produce corroborative evidence of most of their respective contentions. Much irrelevant matter has been introduced and while it is my opinion that no court can arrive at the exact facts and do exact justice between the parties, the conclusion has been reached by me that the safer course is to give the documentary evidence offered its legal effect according to the face thereof as far as possible."

Let us then examine the facts on both sides. To sustain his claim of payment of the $9,500 on the notes sued on defendant introduced the deed from Boone to himself of the Boone tract of land; the execution by him of two deeds of trust for $5,000 each, one to Boone, the other, a second mortgage to plaintiff for the $5,000 borrowed to make the cash payment. The payment of $5,000 by defendants to Boone. These instruments defendant claims demonstrate that defendant Hatch was the real owner; that the note of Hatch makes him the borrower and plaintiff the lender and the transaction settled their relation to the land. That there was no mistake, no fraud. In addition to this Hatch swears that plaintiff had no interest in the land, and that he, defendant, was the true owner. Moreover Guynan, Gosnell, McGonigle and defendant's brother testify to the effect that plaintiff had said to them or in their presence, that "Peter (by which name plaintiff

called defendant) had made $10,000 on a land trade," indi--
cating the Boone-Levy trades.

On the other hand, to show the true relation of the par-
ties as he claims, plaintiff offered in evidence first the written
contract between Boone and plaintiff dated December 17th,
1886, whereby Boone sold to plaintiff the northeast quarter of
the northeast quarter of section 18, township 48, range 33,
county of Jackson, for $10,000 payable $5,000 in cash and
$5,000 in two years. Fifty dollars was paid down at the sign-
ing of the contract. This agreement was in the handwriting
of plaintiff. Plaintiff produced the check for $50 to Boone
on Armours' Bank and indorsed by Boone. Plaintiff testified
that at the end of the sixty days he took the title in Hatch's
name and gave Hatch $5,000 in cash to make first payment.
With this money Hatch paid Boone $4,950 which sum with
the $50 paid by plaintiff, completed the first payment, and
Hatch retained the other $50 for his services. Hatch also
gave plaintiff a second deed of trust to secure plaintiff for the
money advanced. About March 12th, 1886, Hatch sold this
land to Moses Levy for $20,000. Levy paid $1,000 down and
Hatch handed this sum over to plaintiff as shown by Hatch's
check. Two notes one for $7,500 and another for $2,500
were given to Hatch and were indorsed by him to plaintiff.
These facts are all shown by documentary evidence.

But the defendant Hatch denies that plaintiff had any
interest in these notes; says he retained them until collected,
and then paid plaintiff $7,000 received on one and $2,500 re-
ceived on the other. But plaintiff says he had the notes
from the time of their execution and he is corroborated not
only by the documentary indorsements by Hatch to plaintiff,
but the books of Armour Brothers' Bank. Those books show
beyond the cavil of a doubt that plaintiff placed said notes in
said bank for collection the summer after the sale and they re-
mained there until the day the $7,500 note was paid, January
7th, 1888. On this last mentioned day plaintiff withdrew

said note from the bank and left the $2,500 note in the bank until July 9th, 1888, when he also withdrew the latter note and on the first day of August he employed defendant to collect it and took defendant's receipt in writing , showing he held it for plaintiff. These receipts and bank books are utterly irreconcilable with defendant's testimony that he held said notes in his possession until they were paid. The receipt is a solemn admission in writing of plaintiff's ownership of the $2,500 note.

But there are other conceded facts which are consistent only with plaintiff's ownership of these notes and can not be explained on the theory of defendant's ownership. When defendant received the $4,000 balance on cash payment by Levy instead of turning over the whole amount to plaintiff as he had when he received the $1,000, he paid plaintiff $3,481 only, leaving a balance of $519. According to plaintiff's claim that the Boone tract belonged to him and that defendant held it in trust for him, this $519 was properly accounted for by the payment of $500 as commissions for the agent making the sale and $19 for bringing down the abstract to date of deed. It is admitted that plaintiff at this time surrendered and satisfied his $5,000 mortgage given by defendant on said tract. But if defendant owned this land it is apparent that plaintiff should not have been charged as he was with these commissions and for the examination and extension of the abstract.

But again, defendant collected the interest on the $2,500 note in September, 1888, amounting to $100. He gave plaintiff his check for $95 and retained $5 for collection. When he received $7,250 on the large note he paid plaintiff $7,000 only and retained $250 for his fee. When he collected the $2,500 note it amounted to $2,600 and he paid plaintiff $2,500 and retained $100 for his fees. Again plaintiff is buttressed by the bank books as to the $400 interest collected on the $7,500 note in September, 1887. Defendant testified that he held that note at that time and received the

interest on it, whereas the bank books show that this interest was paid to the bank and placed to the credit of plaintiff, as was also the $95 received in defendant's check for the March interest on the $2,500 note in 1888.

So that when we are confronted with the question of the equitable ownership of the Boone tract when sold to Moses Levy, we have no hesitancy in answering that we can come to one conclusion only consistent with the documentary evidence and the admitted facts resting in parol. The immediate assignment of the notes to plaintiff, his retention thereof in the bank, the collection and credit of the interest to his account; the turning over to him by defendant of the purchase money less the ordinary collection fees and agent's commissions; the written receipt of defendant for the $2,500 note, all point to plaintiff as the real owner and defendant as his trustee. But this is not all. The record abundantly establishes by defendant's own testimony that at that time defendant was consenting and agreeing with plaintiff to take property bought by plaintiff in defendant's name and was holding it as trustee for plaintiff, and was incurring no risk in so doing, as he says he understood and considered plaintiff to be worth $100,000, and the trust relation was well known, and defendant had sufficient property in his hands with which he could reimburse himself for any loss that might accrue from this trade. Nor was it unreasonable that defendant, who was the son-in-law of plaintiff and a man without means, and who had been the beneficiary of plaintiff for the home in which he lived and for moneys advanced to improve it to the amount of $9,500, should consent to accept the deed and execute the $5,000 note to Boone, when as he says he was relying upon plaintiff's promise to give his entire estate of $100,000 to defendant's wife at his death.

Counsel rely upon Porter v. Woods, 138 Mo. loc. cit. 550, wherein Judge Burgess said: "It is unreasonable to suppose that Oliphant would have taken a deed to the land in

which he had not a dollar's interest, and assume the burden of an indebtedness of $75,000 merely for the accommodation of the syndicate."

The facts of that case need only be contrasted with the conditions in this, to show how widely they differ. Here there were many and cogent reasons why Hatch should not hesitate to accommodate his father-in-law by consenting to hold a title for him. Plaintiff had been generous to him in giving his wife the home in which he lived and had advanced him large sums to improve it. Hatch's wife was the sole apparent heir to plaintiff's fortune, which was large. Hatch was his legal adviser and had been entrusted, poor as he was, with the legal title to at least three other tracts of real estate; the Hazard Place property, Wyandotte county, Kansas, property and Texas county, Missouri, property. He felt no apprehension or risk as to these and up to the time of this transaction the most friendly relations existed between them.

It was said by the learned referee that he resolved the difficulties in defendant's favor because "the whole risk was upon defendant," because he executed his notes to Boone and plaintiff when the Boone tract was purchased by plaintiff, as the written contract shows it was, and having assumed the payment of the purchase money to Boone he should have the profits. This is worthy of careful consideration.

What was the risk assumed by defendant in fact? Plaintiff confessedly furnished a cash payment of $5,000 to Boone and had defendant execute a mortgage to Boone for $5,000 for the deferred payment. Plaintiff, not defendant, had invested the $5,000 cash and deferred himself to another $5,000 due Boone for the purchase money. To reimburse himself for the $5,000 advance, he must pay the remainder of $5,000. If this property had depreciated fifty per cent then the deed of trust given by defendant for $5,000 would have been worthless and plaintiff would have lost his $5,000, cash payment,

and in view of the financial condition of defendant, that was the probable result.

Moreover, as a lawyer, he recognized the trust relation and had no fears that a court of equity would declare him a trustee if any loss should occur and fasten the liability upon the *cestui que trust* as between him and Small.

We do not think the risk he assumed under these circumstances absolved him from his trust and exonerated him from his duty to account to plaintiff for the proceeds of the property he held for plaintiff.

But in our view it is unnecessary labor to discuss further why Hatch might have hesitated to assume the trust as it is plain to us that his prompt disposition of the funds arising from the Levy sale by handing over every dollar except only agents' commissions and reasonable attorney's fees show that he recognized at that time that they belonged to plaintiff. He promptly paid over the cash, and indorsed the notes for the purchase money to plaintiff.

Let us, however, inquire further as to the contention that in so doing he was merely making partial payments on the notes sued on. It must be borne in mind that when he made those indorsements and payments no break of the friendly and intimate relations had occurred. When these large sums, $7,000 at one time and $2,500 at another and $1,000 at another, were made, they were not indorsed on the notes secured by the mortgages on the homestead. If these moneys belonged to defendant the most natural thing to do was to require plaintiff to produce the mortgage notes and indorse each of these payments thereon. As plaintiff had exacted the notes from him no reason could exist why he should not credit payments on them. But defendant says that at the time he had grown suspicious of plaintiff and feared there would be trouble between them. If this was true, so much greater was the reason why defendant, a lawyer and business man, should have insisted on a credit on his notes for his payment. The flimsy

excuse he attributes to plaintiff could have been readily disposed of by saying that if he was going to will the notes to the children, it would be accomplished more certainly by satisfying the mortgage on the lot inherited from their mother.

The history of the pleadings in the case satisfies us with the very conclusive evidence that the Levy notes belonged to plaintiff, that this claim of payments on the notes in suit is an afterthought, and is not sustained by the facts in the case.

My conclusion is that this defense should have failed, just as the others did, and that the documentary evidence is inconsistent with the findings and judgment of the referee and circuit court.

Accordingly, the judgment is reversed and the cause remanded with directions to enter a decree reforming the mortgage and entering judgment for the amount of the principal and interest on the two notes, and directing a sale of the premises to satisfy the same.

SHERWOOD and BURGESS, JJ., concur.